## Hardy Buggy Company v. Paducah Banking Company.

(Decided February 25, 1919.)

Appeal from McCracken Circuit Court.

1. Bills and Notes—Endorsers—Liability.—If, after the indorser of commercial paper has paid the debt, a recovery is had by the creditor from the principal, the indorser is entitled to recover from the creditor the amount obtained from the principal. So also if collateral notes given by a surety or indorser have been converted into money which amounts to a greater sum than the debt, the indorser or surety may recover of the holder the balance over and above the amount necessary to extinguish the debt.

2. Bills and Notes—Endorsers—Liability.—An indorser of commercial paper is relieved from liability thereon by discharge in bankruptcy.

3. Bills and Notes—Endorsers—Liability.—Where a payee in commercial paper, who indorses several different notes to a bank on different occasions, afterwards becomes bankrupt, and by a composition agreement with its creditors pays the bank 20% upon the notes and is discharged in bankruptcy, but at the same time

enters into a written agreement with the bank that in case the bank collects the notes in full it shall retain enough of said money, plus the 20% paid in the composition, to satisfy the full indebtedness of the indorser to the bank before it shall become liable to the indorser for any excess payment, the indorser is estopped to claim a recoupment of the bank upon a note which is over paid when other notes are unpaid.

BRADSHAW & McDONALD for appellant.

WHEELER & HUGHES for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The Hardy Buggy Company, a domestic corporation, was engaged in manufacturing vehicles in Paducah in 1914 and 1915. In selling its products it received, in many instances, negotiable paper from its customers, which it in turn indorsed and discounted with the Paducah Banking Company. All the notes were not discounted at one time, but only as the buggy company required funds to meet its payroll or other emergencies, and the notes were sold and delivered to the bank from time to time over a period of many months. In March, 1915, the buggy company went into bankruptcy.

Shortly thereafter it entered into a composition with its creditors upon a twenty per cent basis, and on July 6th, 1915, the twenty per cent was duly distributed to all the creditors, including the Paducah Banking Company, to which the buggy company was liable upon its indorsement, and upon one or more individual notes for approximately $5,000.00. At the time of the making of the composition and the payment of the twenty per cent to the banking company it was agreed between the bank and the buggy company that in the event the bank should succeed in collecting the full face of the several notes which it had purchased from the buggy company, and which the buggy company had indorsed to it, or any amount greater than the total sum for which the buggy company was liable to the bank, the excess over and above said amount, the twenty per cent included, was to be returned to the buggy company by the bank. Shortly after the composition, and in due course, the buggy company was discharged in bankruptcy and, therefore, relieved of liability to the bank upon its indorsements of the several notes which it had discounted at that insti-

tution. From time to time the bank collected in full some of the notes discounted to it by the buggy company and payments upon other notes, until finally the amount collected by the bank, added to the twenty per cent which the buggy company had paid it, exceeded the total liability of the buggy company to the bank, after paying all cost and expenses which the bank had undergone, and left a surplus to the credit of the buggy company. Thereupon the buggy company instituted this action against the bank to recover $834.57, which it alleged was the total of the excess collected by the bank over the indebtedness of the buggy company to it.

By its answer the bank admitted that it had collected enough money on the several notes indorsed to it by the buggy company, plus the twenty per cent paid by the trustee in bankruptcy, to extinguish the total liability of the buggy company to it, and leave a balance of $76.04 to the credit of the buggy company after the payment of all cost and other expenses, and tendered said amount to the buggy company. The buggy company, however, refused to accept the $76.04 in satisfaction of its claim, but insisted that it was in the same position as any other indorser who pays part of a note and the holder subsequently collects the full amount of the note from the maker, and therefore the holder must refund to the indorser (the buggy company) the amount paid by the indorser. It is the further contention of the buggy company that the several notes discounted at the bank were separate and distinct transactions and independent contracts to be adjusted independently of each other, and that when the bank collected the note of ''A'' in full, indorsed to it on March 1, 1915, the buggy company was entitled to a refund of twenty per cent paid by it in the composition, because the bank had received upon that particular transaction 120%, whereas it was entitled to receive only 100%, and this notwithstanding the note of ''B,'' discounted on March 5, 1915, had not been paid by the maker and the bank had only received the twenty per cent. In support of this contention the buggy company argues that it was not liable to the bank upon any indorsement because of its discharge in bankruptcy and, therefore, since it was not liable on the indorsement of the note of ''B,'' which was not paid, the bank had no right to take the surplus amount paid on the note of ''A'' and apply it to the extinguishment of the

note of "B," whereon the buggy company was originally liable as an indorser but which liability had been extinguished by the discharge in bankruptcy.

On the other hand the bank contends that the discounting of the several notes by the buggy company must be treated as a single contract or transaction in the adjustment of these matters, because it proved its claim against the bankrupt buggy company as one sum, $5,125.55, and that in making the composition it entered into a specific agreement with the buggy company whereby it was to have and receive the full amount of its indebtedness from the several notes discounted to it, and the twenty per cent, before it was to be liable to the buggy company for any excess, and that the agreement was not with respect to each separate note but as to the whole number and amount due. As a rule generally recognized, if after the surety has paid the debt, a recovery is had by the creditor from the principal, the surety is entitled to recover from the creditor the amount obtained from the principal, but the creditor is not entitled to an overpayment either by the sureties or by the principal and sureties. If security, given by a surety, having been converted into money, brings more than the amount for which the surety is liable, he can recover the excess. 32 Cyc., p. 236.

"Where the creditor, after payment by one surety of the amount for which the sureties were liable, recovered a dividend from the insolvent principal on the whole amount originally due from the principal, the surety who made the payment is entitled to recover a share of such dividend bearing the same proportion to the whole dividend as the sum paid by the surety bore to the sum proved for by the creditor." Gray v. Seckham, L. R. 7, Ch. 680.

While the buggy company is absolved from liability to the bank upon its indorsement of each of the notes by reason of its discharge in bankruptcy, nevertheless it had no interest or property in the notes which it sold and transferred to the bank and was not entitled to recover from the bank any part of the sum which the bank collected from the makers of the several notes. Its right, if it had any, was to recoup the amount it paid upon the several notes which brought the total amount paid upon such notes above the amount due the bank, if it did so

do. But when it entered into the agreement with the bank whereby the bank was to be fully reimbursed on account of the buggy company's entire liability to it before the bank was to pay the buggy company the ex- cess, it was bound by its agreement and is not entitled to be recouped until the bank has been fully indemnified. As to the terms of the contract and agreement between the bank and the buggy company, the evidence is con- flicting, but the chancellor found the facts against ap- pellant, and there is sufficient evidence to justify the con- clusion reached. But for this agreement the buggy com- pany would be entitled to recover of the banking com- pany the excess which the bank has collected upon the several notes without relation to the deficit on other notes up to the amount of twenty per cent paid by the buggy company. The chancellor having found the terms of the agreement as contended by appellee bank, and there being sufficient evidence and consideration to sup- port it, we perceive no error in the ruling of the court, and the judgment is affirmed.